BURKS, J.
The appHlee’s bdl was fiM to enforce his judgment lien against the unaliened lands of the appellant, and also against other lands which had been aliened by him to his wife, children and brother-in-law, parties to the suit, and which lands are charged in the bill to *have been conveyed with the fraudulent intent to hinder, delay and defeat his creditors, and especially the appellee, in the recovery of their debts.
Process to commence the suit was served upon all the defendants. The appellant appeared and filed a demurrer, plea and answer to -the bill. The other defendants made default. No depositions were taken on either side, and the cause, duly matured, was heard on the bill of the appellee, the demurrer, plea and answer of the appellant, replications and joinder, exhibits, and the decrees nisi at the' rul.es: 'and the court taking thi bill for confessed as to all of the defendants except the appellant, and holding that all of the lands in the bill mentioned were subject to the lien of the appellee’s judgment, ordered them to be sold, the lands unaliened to be first sold, and the other lands in the in *179 ver.se order of their alienation, and as to these last, the sale was suspended until the further order of the court. From this decree the appellant alone applied for and obtained an appeal. His counsel assigns as error in the decree, that the lands of the alienees are held liable and ordered to be sold. There are several answers to this assignment of error. In the first place, if there be error in decreeing these lands tobe sold, it is not to the prejudice of the appellant. The sale could injure the alienees only, and they are not here complaining. Moreover if they did complain it would be of no avail to them. The bill charges the conveyances to be fraudulent. The allegations are positive and explicit, and were in the court below treated as true on the bill taken for confessed as to them. They never appeared and made defense in that court, doubtless because they had no defense to make, and for the same reason they did not unite in the appeal. Tt is incredible that they should not have defended their title to lands alleged in the pleadings to be valuable, if such title had been valid as against the lien asserted by the ^complainant. If we may look to the appellant’s answer to the bill as a defense made for them, we see very readily why they did not answer in person.
The appellant’s deed of 6th February, 1873, to his son and to his. daughter and her husband, purports on its face to be for_ a nominal consideration only, and he admits that it is voluntary.
He denies that the deed of settlement to the separate use of his wife was cither voluntary or made with intent to defraud his creditors, and claims, in substance, that the consideration was the wife’s property, received by him from her father’s estate, to which she was equitably entitled, and which she agreed he should take and have as an equivalent for the settlement which was made. The bill charges that he received the wife's legacy ($1.880) from her father’s executor in 1 862, in Confederate money, and at the same time, and in like currency from the same executor, a legacy of $400 bequeathed directly to him, and that the aggregate of these sums ($2,280) makes the precise sum recited in the deed of settlement as “received by him in her right from the estate of her deceased father,” and these allegations are not denied in the answer. The deed of settlement bears date on the 24th day of February 1869, nearly seven years after the legacies were received. It is true the deed recites the agreement referred to and the receipt of the wife’s legacy thereunder, as the consideration for the settlement upon the wife, but the recitals, although evidence against the grantor, are not evidence against a creditor of the grantor. Where such recitals are relied on to affect a creditor not a party to the deed, there must be distinct proof of the previous agreement, and none was furnished in this case. William & Mary College v. Powell & others, 12 Gratt. 372. 384, 386.
The conveyance to Charles R. Hancock, the brother-in-law of the appellant, bears date, the day before the *date of the settlement on the appellant’s wife, and both deeds were admitted to record on the same-day. This conveyance purports to be in consideration of $1,800 in hand paid by the-grantee, and the appellant, in his answer, says, that the money was actually paid to-him “in the presence of witnesses.”
The bill which was filed in February, 1874, charges^ that the grantee has never taken possession of the land covered by this conveyance, and that the same has been used and enjoyed by the appellant in the same manner as before the said conveyance, and these allegations are not denied in the answer, nor were any of the witnesses, in whose presence the money is said to have been paid, examined, nor has the grantee ever asserted any claim to the land in this suit.
Looking to the whole record I am well satisfied that each of these conveyances, if not fraudulent in fact, is at least not upon consideration deemed valuable in law, and is therefore void as to the appellee’s judgment. The debt on which the judgment was based is evidenced by bond dated nearly seven years before the first of these conveyances was executed.
Another assignment of error is that the unaliened lands of the appellant were ordered to be sold when it was neither alleged nor proved that the complainant (the appellee) had exhausted his remedy at law to obtain satisfaction of his judgment out of the personal estate of the appellant.
Previous to the general revision of the laws in 1849, there were two legal remedies by which the judgment creditor was enabled to reach the lands of his debtor. One was through the execution of ca. sa. under which the debtor was taken and imprisoned, and might be discharged from imprisonment on surrendering his property, and the other was by elegit, whereby all the goods and chattels of the debtor (except his oxen and beasts of *the plow), and a moiety of all his lands and tenements whereof he was seized at the date of the judgment or at anv time afterwards, were drbvorrd to the creditor by reasonable price and extent, to have and to hold the e-oods and chattels as his own, and the moiety of the land as his_ freehold until thereof the judgment was satisfied.
The creditor having these legal remedies, equity had no jurisdiction to decree a sale of the lands to satisfy the judgment, unless it was made to appear that the remedy at law to enforce the judgment was inadequate. It was always regarded that the legal remedy by elegit was inadequate where it was shown that the^ rents and profits of the land would not satisfy the judgment within a reasonable time, and in such case a court of equity would take jurisdiction and decree a sale.
Such was the state of the law in 1849, when the ca. sa. was abolished, and to supply its place other existing remedies were enlarged and some new ones were provided. The liens of judgments and decrees for money, which theretofore had been mere incidents of the elegit and attached to a *180 moiety only of the debtor’s land, were made express, direct, positive, absolute charges on all the real estate of the debtor, and the elegit was made to conform to the statutory lien. Borst v. Nalle & als., 28 Gratt. 423, 430. Code of 1873, ch. 182, §§ 6. 1.
The lien of -the fi. fa. was enlarged so as to extend to all the personal estate of or to which the judgment debtor is possessed or entitled, although not levied on or capable of being levied on under the law, as it then existed, and this additional lien was made continuous; that is, it was provided that it should “cease whenever the right of the judgment creditor to levy the fieri facias under which the lien arises, or to levy a new execution on his judgment, ceases or is suspended by a forthcoming bond being given and 'forfeited, or by -a supersedeas or other *legal process,” and means were provided for enforcing this lien. Code of 1873. ch. 184.
And it was at the same time enacted as fellows: “The lien of a judgment may always be enforced in a court of equity. If it appear to such court, that the rents and profits of the real estate subject to the lien will not satisfy the judgment in five years, the court may decree the said estate, or any ■part -thereof, to be sold, and the proceeds anplied to the discharge of the judgment.” Code of 1873, ch. 182, § 9.
Looking to the policy of the legislature at the revision, and to the broad and comprehensive language of the enactment, I do not doubt that a judgment creditor, if he so elect, may resort to a court of equity to enforce the lien of his judgment against the real estate of his debtor-, without first proceeding by execution at law to subject -the personal estate, or assigning any reason for not doing so. The remedy in equity against the real estate, (now the only remedy since the elegit was abolished, Acts 1871.-2, ch. 373, p. 469), is not dependent upon the inadequacy of the legal remedy to satisfy the judgment out of the personal estate, or the insufficiency of such estate for that purpose, but it may “always” be resorted to, whether there be or not'personal estate of the debtor sufficient to satisfy the judgment. The remedy is given in general terms, and if it had been intended to limit its application to cases in which there, was no' personal estate of the debtor, or where such estate was not sufficient to satisfy the judgment, it would doubtless have been so provided in express terms. See the case of the Commonwealth by, &c., v. Ford &. als., 29 Gratt. 683, in which it was held, that the right of the commonwealth to seize and sell under execution the real estate of defendants against whom she had judgments did not deprivé her 'of the right, if she elected to exercise it, to resort to a court *of equity to subject such real , estate to the lien of such judgments.
All the property, real'and personal, of the debtor, except what is exempt under the law, is liable for the payment of his debts. The personal property may ordinarily be reached under execution at law. while the real estate can be subjected by suit in equity only. If the creditor resort to the real estate first and the debtor has personal property which he prefers should be applied to the payment of the judgment, he certainly can make the. application himself more speedily and at less expense than an officer of the law can under an execution, and thus relieve his real estate to the extent of the value of the personal estate so applied. If he fail or refuse to make the application, it is his own fault. Creditors seldom, if ever, resort to equity to enforce their judgments against the lands of their debtors, unless arid until they are compelled to do so, because the proceeding is both dilatory arid expensive. When they do resort to it,- however, the rights of the debtor are protected in the most ample manner. His lands cannot be sold if the rents and profits thereof will satisfy the judgment in five years, and when sold, a day is usually given him for the payment, and the sale must be on a reasonable credit.
While the appellant assigns as error that the appellee does not allege in his bill that he has exhausted the appellant’s personal property by execution, he yet complains in his answer that he has been harrassed with executions sued out by the appellant since the commencement of this suit. However that may be. he does not claim that he has not received credit for anything realized on these executions, and he does not deny that the greater part of the judgment still remains unpaid. He avers in his answer that his property, real and personal, which remains unaliened and therefore confessedly liable for the appellee’s judgment, is “at least of the value of $5,000, and more *than three times the value of the balance of the said judgment;” “that individually he is singularly free from debt;” “that his individual debts do not amount to more than $300, all tpld,” and leaves us to infer that his debts as surety are not large, for the judgment of the appellee is the only debt he specifies as owing by him as surety. The presumption is. that the judgment of the appellee is the only judgment against him, as none other is mentioned in his answer and no judgment creditor has ever applied to become a party to this suit. If' his statements be true, he might and should have paid the appellee’s judgment long ago. He admits that it is owing, and that his property is bound by it, and claims that he owns property of value more than three times the balance due on the judgment. It would have been no less wise than just, I think, if he had paid the appellee’s judgment without this fruitless attempt to evade it.
Another assignment of error is that the appellant is surety on the debt upon which the appellee’s judgment was recovered, and that the deed 'of trust to Joseph M. Terry was given by the principal debtor, among other things, to indernriify the appellant as such surety, and that the court should have compelled the appellee to resort to this deed of trust in exoneration of the appellant before subjecting his property.
The alleged principal debtor is not a party to the suit, is bankrupt, and the appellee has *181 no judgment against him. If the assumption ; of the appellant’s counsel that the appellant is surety were true, without conceding that the appellee in that case should be required to resort to this deed of trust, it is a sufficient answer to this assignment of error to say, that it does not appear by the record that the appellant is surety. The bill contains no such allegation or admission. It is averred in the appellant’s answer to be so, but the averment is affirmative matter, and is not proved. The deed of trust indemnifies *the appellant in general terms as surety upon any and all papers upon which the appellant is bound as such surety. But the debt on which the appellee’s judgment was recovered is not specified in the deed as one of the debts on which the appellant is surety, and if it were so specified and described the deed would be no evidence of the fact against the appellee, as he is not a party to the deed.
There was no necessity of making Joseph M. Terry a party to the suit. He is the trustee in the deed of trust referred to, but as we have seen the appellee was not bound to resort to that deed in this suit. The appellant avers in his plea that Joseph M. Terry is the joint owner with the appellee of the judg- , ment sought to be enforced. If the fact averred, taken as true, would be a sufficient reason for requiring him to be made a party, still there was no proof of such joint owner- , ship. After the suit was brought, and a short time before the decree appealed from was rendered, as appears from a deed in the record. Hockman and wife conveyed a portion of the land which had been conveyed to them by the appellant to one Lewis Huff, as trustee, to secure an alleged debt to W. IX E. Duvall, and it is assigned as error that Huff and Duvall were not made parties by amended bill. If these persons had any interest in the subject of the suit they acquired it pendente lite, and it was not necessary, therefore, that they should be brought before the court to enable it to disnose of the subject. At all events, if they claimed any such interest as made their presence as parties necessary, they might and should have brought the matter to the notice of the court by netition, and had their claims passed upon.
The last assignment of error to be noticed, is that the unaliened lands of the appellant were ordered to be sold without its being made to appear that the rents and *profits thereof would not satisfy the apoellee’s iudgment in five years.
The bill contains no allegation as to the rents and profits, and the answer of the apnellant is silent on the subject. There is no oroof; no enquiry was asked or ordered. The fact of the insufficiency of the rents and profits to satisfy the iudgment within the prescribed period should be made to appear before any sale is made, and if the appellant desires it, he may have an enquirv to determine that fact. But this is no cause for reversing the decree. The decree being interlocutory may be amended in that respect, and as amended affirmed. Ewart v. Saunders, 25 Gratt. 203;, Horton & others v. Bond, 28 Gratt. 815.
I am of opinion, on the whole case, there is no error in the decree complained of for which it should be reversed, but that the decree should be amended as above indicated, and as amended be affirmed.
The other judges concurred in the opinion, of BURKS. J.
Decree amended and affirmed.