Burks, J.
Of the various questions to be determined in this case, the one deemed of most importance is, whether the deed of trust to Thomas Croxton, trustee, was made with intent to hinder, delay and defraud the appel *589 lants and other creditors of the grantor, John M. Broekenbrough.
The deed bears date the 26th day of October, 1870, and after reciting that the grantor is indebted to I. M. Parr, of Baltimore, Maryland, by four promissory notes, all of the same date with the deed, for the following sums, and payable as follows, to-wit: one note for $3,200, due November the 1st, 1871; another for $2,960, due November the 1st, 1872; another for $3,720, due November the 1st, 1873; and the last for $3,360, due November the 1st, 1874, purports to convey to the trustee a tract of land called “The Island,” lying on the Rappahannock river, with all the buildings, improvements, crops then upon or thereafter grown upon- the said land, until the said notes are fully paid, all stock of horses, mules, cattle, sheep and hogs, with the increase of the same then on the said land, or thereafter placed on the same, and all farming implements used in the cultivation of the land, in trust to secure the payment of the notes aforesaid to the said Parr, as they respectively become due and payable. In default of the payment of any one of the said notes at maturity, the trustee, on request by the said Parr, is empowered and required, after advertising, to proceed to sell the property conveyed, for cash, to an extent sufficient to pay all the costs and charges attending the execution of the trust, including the usual commissions, and whatever sum may be then due to the said Parr on any or all of said notes that may have matured, and upon such credit for the residue as will raise the sum or sums necessary to satisfy any of said notes which may not have matured at the time of the sale; and after fully satisfying the said notes with all interest and the costs, &c., aforesaid, the trustee is required to pay the balance arising from the sale to the grantor. No schedule or inventory of the property conveyed was annexed to the deed.
*590 It is contended, in the first place, by the learned counsel for the appellants, that this deed is fraudulent on its face. There is no doubt that the provisions of a mortgage or deed of trust may be of such a character as of themselves to furnish evidence sufficient to justify the inference of a fraudulent intent. Such is the case where the grantor reserves a power over the property conveyed incompatible with the avowed purposes of the trust and adequate to the defeat thereof. This principle was enunciated in Lang v. Lee & others, 3 Rand. 410, and has been repeatedly recognized by this court in subsequent decisions. Sheppards v. Turpin, 3 Gratt. 357, 373, 397, 398, et seq.; Spence v. Bagwell, 6 Gratt. 444; Addington v. Etheridge, 12 Gratt. 436; Quarles & others v. Kerr, 14, Gratt. 48; Perry & Co. v. Shenandoah Nat. Bank & others, 27 Gratt. 755.
While, however, the principle referred to is established by these decisions, it is equally well settled, in this state at least, that no irresistible inference of intent to defraud is deducible from a provision in a deed of trust postponing a sale of the property conveyed for a reasonable length of time and reserving the use of the property to the grantor until sale, even although a portion of the property conveyed may be perishable in its nature and consumable in the use; nor is such inference a necessary deduction from the omission to annex a schedule or inventory of the property to the deed; nor is the inference a necessary one where ail these circumstances exist in the same case. Lewis & others v. Caperton's ex'or & others, 8 Gratt. 148; Cochran v. Paris, 11 Gratt. 348; Dance & others v. Seaman & others, Id. 778; Sipe v. Earman & others, 26 Gratt. 563.
I do not mean to say that these circumstances, apparent by the deed, when taken in connection with extrinsic evidence, are not entitled to weight in determining the question of intent. I think they are so entitled; but *591 alone they are not sufficient to establish fraud. They are consistent with an honest purpose.- The presumption of law is in favor of honesty, and “the court cannot-presume fraud unless the terms of .the instrument preclude any other inference." Allen, J., in Dance & others v. Seaman others, supra.
Recurring to the deed in question, I find nothing in it particularly distinguishing it from other deeds held by this court to be valid, except the provision conveying or purporting to convey the crops to be grown on the land until the secured notes are fully paid, and the further provision purporting to convey horses, mules, cattle, &c., which might be thereafter placed on the land.
It is contended that these provisions are indicative of fraud; that while the professed object was to secure the debt to Parr, the real design was, while securing Parr, to shield the property from other creditors and secure the control and use of it to the grantor; and thus that the whole deed was vitiated and rendered void as to such creditors.
This would seem to be a harsh inference. If, as was thought b}- the judge below, the deed was inoperative to bind the future crops and the stock which might thereafter be placed on the land, a futile effort to convey under a mistaken view of the grantor’s right would not he a sufficient ground for the charge of fraud. A man may well mistake the law in such a case and he innocent. Ror, in this view, would the creditors be injured. They might, by legal proceedings, subject the crops and the after-acquired stock to their debts if they chose to do so. If, on the other hand, these provisions were effectual to pass the title at law to the crops and stock, or to bind the same in equity, I do not perceive how fraud can be justly predicated of them. It would seem that the scheme of the deed ivas, that until default in the payment of the sums secured, the crops made on the farm, *592 as well as any stock of the description mentioned which nbght be placed thereon, should constitute a part of the subject. Ho benefit is reserved to the grantor. should such an arrangement be regarded as fraud-u^ent ? To my mind, it is rather indicative of an honest purpose in the grantor to dedicate not only what he had, but also what he might make or acquire, to the payment 0f pjg debts.
It is a maxim of the common law that a man cannot grant a thing which he has not—nemo dat quod non habet. To constitute a valid sale at law the vendor must have a present property, either actual or potential, in the thing sold. Smithhurst v. Edmunds, 1 McCarter (14 N. J. Chy. Rep.) 409. It is said “ that things have a potential existence which are the natural product or the expected increase of something already belonging to the vendor.” 9 Bush. (Ky.) 319. Hence, trees, grass, and corn growing and standing on the ground, fruit upon the trees, and wool upon the sheep’s back may be mortgaged. The legal title passes. Idem. There is conflict tin the authorities as to whether unplanted or future crops—fructus industriales—can be conveyed so as to pass the title at law. It was held in a recent case in the supreme court of New York that while at law a mortgage or sale of future acquired personal property, the mortgagor neither having acquired the thing nor the agent of its production at the time of making the contract, creates no valid subsisting property, yet if the future-acquired property be the product of present property in the mortgagor, as the wool growing on a flock of sheep, or the produce of a dairy, or of a farm, or anything of that character, the mortgage will take effect upon the property as soon as it comes into existence, and will be perfectly binding at law. Corderman v. Smith, 41 Barb. 404.
In Beale v. White, 94 U. S. R. (4 Otto) 382, it is said that the law will permit the grant or conveyance to take *593 effect upon the property when it is brought in to existence and belongs to the grantor, in fulfilment of an express agreement, if founded on a good consideration, and it appears that no rule of law is infringed and the rights of third parties are not prejudiced; but it is there admitted that decided cases may be found (and some of them are cited) in which the rule,.as stated, is greatly qualified, and others where it is expressly denied if applied in the ordinary business transactions.
There are cases to the effect that while a mortgage of unplanted crops does not operate to pass the legal title, yet in equity a lien attaches as soon as they are produced, which will be enforced. See Butt v. Ellet, 19 Wall. 544; Sillers & wife v. Lester others, 48 Miss. 513; Cayee, trustee, v. Stovall, 50 Miss. R. 396; White v. Thomas, 52 Miss. 49; Euurman & Co. v. Robb, 52 Miss. 653.
Upon the general doctrine in equity as to liens or charges upon after-acquired property, Mr. Justice Story in Mitchell v. Winslow, 2 Story, 630, after an examination of the authorities, says: “ It seems to me a clear result of all the authorities' that wherever the parties, by their contract, intend to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor or not, or if personal property, whether it is then in esse or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto against the latter, and all persons asserting a claim thereto under him, either voluntarily, or with notice, or in bankruptcy.” And this would seem to be the doctrine on which Holroyd v. Marshall, 9 Jur. M. S. 213, was decided by the House of Lords in 1863.
Rumerous cases upon the general subject are referred to in 2 Wrait’s Actions and Defences, 170, et seq.
*594 . I have referred to these decisions to show the somewhat uncertain state of the law on the subject of the transfer of titles to and the creation of charges upon fu- . ture crops and after-acquired property generally; and as I do not deem it absolutely essential in this case to determine what is the rule on the subject, I desire to be understood as expressing no opinion upon it. The crops raised on the land after the deed was made have all been consumed, except a portion conveyed to Parr by the deed of November the 16th, 1874. The judge below decided that these crops remaining are subject to the lien of the execution of 13. W. Brockenbrough. This decision is adverse to the appellees, and they are not complaining. And so as to the property, if any remains, which may have been acquired by substitution or exchange for property specifically conveyed in the deed. The decree appealed from seems to determine the right to this property in favor of Parr’s trustee. The only party who could complain of this is the execution creditor, and he has not appealed and is making no objection.
Looking to the evidence in the case, I find nothing indicating a fraudulent purpose on the part of any concerned in the transaction which is the subject of investigation. The debt secured was for money lent in good faith. No one can doubt that. It is admitted by the counsel for the appellants. The grantor in the deed was more or less embarrassed with debt when he made the deed, but was the owner of a large and valuabte estate, and there is no reason to doubt the truth of what he alleges, that he supposed by borrowing the money and getting indulgence on the payment he would be able to discharge all his liabilities. The Island farm was estimated to bo worth at least §20,000, The Cottage farm §8,000 or more, and he had other property besides. I have not made the calculation, but from the report of the commissioner it would seem that his liabilities did *595 not exceed the then estimated value of his property. There seems to have been, at the date of the deed,- only one judgment against him, the principal of which was $800. Although The Island was incumbered by the deed of trust made by B. W. Brockenbrough in 1853, The Cottage farm and other property were not incumbered, except by the comparatively small judgment before mentioned. He was left in the possession of the property conveyed to the trustee, Croxton, as contemplated by the deed, and as is usual in mortgages and deeds of trust. The evidence shows that he managed the property badly, that the seasons were unfavorable, that his crops were inferior, and that no profit was realized from the farm. It does not appear that his creditors, at the time the deed was executed, complained of any unfairness in the transaction. Certainly, no suits were brought against him until more than two years had elapsed. I find nothing in the circumstances of the case which cannot be reconciled with good faith in the making of the deed.
It is convenient, in this connection, to notice the charge made in argument by the counsel for the appellants, that the debt to Parr is usurious. It might be a sufficient answer to say that the question of usury is not presented by the pleadings. Usury is nowhere charged or insinuated in any of the bills. If the appellants, as creditors, would have been allowed to make such a defence at all for the debtor, which he did not choose to make for himself, the extent of the relief, if usury had been proved, would ■ have been the abatement of the usurious premium. Martin v. Hull, 9 Gratt. 8. But it does not appear that the transaction was in fact usurious. The sum borrowed was $10,000. The rate of interest then allowed by law was twelve per centum, per annum. Interest was computed at that rate, averaged for the four years, and included in the notes, the instalments of prin *596 cipal-money,it would seem, being $2,000 for each of the first two years and $3,000 for each of the last two. This is apparent from a calculation furnished by the’counsel for the appellees.*
The reservations in the deed which was made to Wright (trustee) to secure the debts due to Mrs. Brockenbrough and Settle do not vitiate the deed. The grantor had the right to convey his property subject to the exemptions allowed by law, and such is the effect of the deed. The other objections to this deed need not be noticed, after what has. been said in passing upon the validity of the deed to Croxton.
The other deed to Wright, settling the property therein mentioned upon the grantor’s wife and children, is, of course, void as to existing creditors, un *597 less supported by a valuable consideration. If any consideration therefor moved from the wife, the deed would be upheld to that extent. Such consideration is recited by the deed, but the recitals are not evidence against the creditors. Blow v. Maynard, 2 Leigh, 29; William and Miry College v. Powell and others, 12 Gratt. 372, 384; Price v. Thrash, 30 Gratt. 515. Kb answer to the bill was filed for the wife. In his answer, the husband says that he had gotten by his marriage quite a large amount of money and property, and lie felt that no law would be violated or any injustice done in an effort to secure a bare subsistence to his wife and children out of the remnants of quite a large estate, and that this is all he attempted to accomplish. He does not allege any such agreement for the settlement as is set out in the deed, and there is no proof of any such, nor, indeed, of any valuable consideration for the conveyance. As, however, the decree appealed from does not pass definitely upon the validity of this deed, the rights of the parties under it may be enquired into and adjudicated by the circuit court in the further proceedings to be had in the cause after it shall have been remanded.
It is further insisted that even if the deed to Croxton (trustee) were valid, the rights of Parr, the cestui que trust, were extinguished by the deed of the 16th of Kovember, 1874. Such would be the ordinary effect at law, on the principle of merger. But, in equity, it is a question of intention. The general rule is, that the mortgagee’s acquisition of the equity of redemption does not merge the legal estate as morgagee so as to prevent his setting up his mortgage to defeat an intermediate title, if such appears to have been the intention of the parties and justice requires it. 1 Jones on Mortgages, § 380, and authorities cited in *598 note (1). In the case of Forbes v. Moffat, 18 Ves. R. 384, 890, the master of the rolls, Sir William Grant, “ It is very clear that a person becoming entitied to an estate, subject to a charge for his own hen-may» if be chooses, at once take the estate and keep up the charge. Upon this subject a court of equity is not guided by the rules of law. It will sometimes hold a charge extinguished where it would subsist at law; and sometimes preserve it where at law it would be merged. The question is upon the intention, actual or presumed, of the person in whom the interests are united.” And it is said that even where the parties have undertaken to discharge the mortgage upon the uniting of the estates of the mortgagor and mortgagee in the latter, it will still be upheld as a source of title wherever it is for his interest, by reason of some intervening title or other cause, that it should not be regarded as merged. “This is based upon the presumption' as matter of law,” says Chief Justice JBelloivs in the recent case of Stantons v. Thompson, 49 New Hamp. R. 272 (cited in 1 Jones on Mortgages, § 873), “ that the party must have intended to keeji on foot his mortgage title, when it was essential to his security against an intervening title, or for other purposes of security; and it is no matter whether the parties through ignorance of such intervening title, or through inadvertence, actually discharged the mortgage and cancelled the notes and really intended to extinguish them; still on its being made to appear that such intervening title existed, the law would ju’esume conclusively that the mortgagee could not have intended to postpone his mortgage to the subsequent title.”
I think it sufficiently appears from the evidence and • the circumstances of the ease, that whatever might have been the object and purpose of the deed of November, *599 1874, it could never have been intended, and was not expected, that the security of the deed of trust to Parr should be discharged. The consideration for the deed was nominal, and it is incredible that Parr, against his most obvious interest, should have been willing and have designed to surrender his security and let in the intervening claimants, thus defeating the very object he had in view in the pending litigation, to-wit: the preservation of the security which he held. The deed of trust was never actually released, nor the notes surrendered, although it seems to have been the understanding that they should be surrendered. I think the substance of the agreement was, that Parr should hold it subject to the existing incumbrances, including his own, according to their relative priorities, and that if Parr’s debt should not be full}’ satisfied under the deed of trust held by him, he should not look to the grantor for the deficiency and this agreement should be upheld in a court of equity.
As to the judgment of Settle:
1. It is contended that it is void, because confessed without a writ being issued. It ivas confessed in open court; the court had jurisdiction of the subject , and the defendant appeared and confessed judgment in proper person. Such a judgment is not void. The prime object of the writ is to notify the defendant of the plaintiff’s action. It was waived by the appearance of the defendant and the confession of judgment. A judgment on confession is equal to a release of errors. Code of 1873, ch. 177, § 2. Besides, a judgment not void cannot be collaterally assailed because erroneous.
2. It is further contended that if the judgment is not void, the appellant’s judgment has priority as a lien. The latter was a judgment by default in a pending suit, and has relation to the first day of the term of the court in which it was rendered. The judgment of Settle was *600 confessed in the same court and on the first day of the same term. Both must be treated as judgments rendered on the same day, at the same time. Neither has precedence over the other in point of time. In such case the court takes no notice of the fractions of a day. Coutts v. Walker, 2 Leigh, 268; Skipwith's ex’or v. Cunningham, 8 Leigh, 271, 279, 280; Withers v. Carter, 4 Gratt. 407; Freeman on Judgments, §§ 369, 370. See the provision of the statute, Code of 1873, ch. 182, § 6.
The omission in the decree of any provision for the payment of the debts chargeable on the estate of E. C. Brockenhrough, if error at all, is not an error for which the decree should be reversed. It is not a final decree. These debts may be provided for in the further proceedings to be had in the cause in the circuit court.
IJpon the whole case, I am of opinion to affirm the decree of the court below.
The other judges concurred in the opinion of Burles, J.
Decree affirmed.

Note.—Statement furnished by Appellee’s Counsel:
Transaction—$10,000 was loaned at 12 per cent, interest, the interest being payable yearly, and the principal being payable in annual instalments— $2,000 at one year, $2,000 at two years, $3,000 at three years, and $3,000 at four years.
In accordance with sail agreement, notes were taken as follows, viz:
1st. Instalment of principal due 1st Nov., 1871....... $2,000
One year’s interest on $10,000 at 12 per cent..... 1,200
-$3,200 First note.
2d. Instalment of principal due 1st Nov., 1872........ $2,000
One year’s interest on $8,000............................... 960
-$2,960 Second note.
3d. Instalment of principal due 1st Nov., 1873........$3,000
One year’s interest on $6,000.............................. 720
-$3,720 Third note.
4th. Instalment of principal due 1st Nov., 1874...... $3,000
One year’s interest pn $3,000............................ 360
-$3,360 Fourth note.
Total amount of notes. $13,240
Had the agreement provided for the payment of the principal in four equal instalments ($2,500 each), the interest would have amounted to $3,000. Say $10,000 at one, two, three and four years—average time, two and a half years—at 12 per cent.=30 per cent., or $3,000. But the payments were to be $2,000 at one year, $2,000 at two years, $3,000 at three years, and $3,000 at four years—making the average time two and seven-tenths years, at 12 per cent., and the whole interest $3,240. From which it will appear that the notes were given for the exact and proper amounts according to the agreement for 12 per cent, simple interest.