## Wytheville.

MCGEE AND ALS. V. JOHNSON AND ALS.

July 19th, 1888.

CREDITORS' SUITS—*Pendente lite purchasers—Estoppel.*—In 1881 H., and in March, 1882, J. against W. & Q , and in July, 1882, S. against W. alone, brought their respective bills to enforce judgments on lands alleged therein to belong to W., who answered admitting the ownership, whilst Q. failed to answer. In each suit there was a decree to rent. Commissioner reported his inability to rent for enough to pay the judgments, and in October, 1882, there was a decree in these three suits heard together to sell. In February, 1883, J. filed a supplemental bill alleging that he had just learned that these lands had, before the institution of these suits, been sold under proceedings in bankruptcy and bought by W., who still owed part of the purchase money. In these suits there was an account of liens and lands, the latter being reported as the lands of W., who was present and did not object. In April, 1883, account was confirmed and sale decreed and made in June, 1883, to J.—Q. being present and T. having notice thereof, and neither objecting. Sale was confirmed, and J. had paid half the purchase money on 18th June, 1884. Twelve months after such payment Q., T. and W. filed their cross-bills, making all W.'s creditors parties, and charged that just after the sale in bankruptcy in 1878, W. had sold by parol, and by deed recorded in October, 1882, conveyed to Q. 93 acres, and to T. 30 acres of said land by deed recorded in November, 1882, and that both had paid him the price thereof, which he had paid to his assignee in bankruptcy on the purchase money due him, and had each made improvements on said parcels of land and prayed that the decree of sale be set aside. · Defendants answered the cross-bill, denying the parol sales and the alleged payments thereon, which sales and payments were not established by evidence.

HELD:

    1. Q. and T., being *pendente lite* purchasers, were not necessary parties to the suits to enforce the judgments against W. *Price* v. *Thrash*, 30 Gratt. 515.

2. .Q. and T. are estopped from claiming said parcels of land, having notice of the sale to J. and not objecting until twelve months after the payment of half the purchase money.

3. In such a case there can be no claim for value of improvements. *Hurn* v. *Keller*, 79 Va. 419.

Appeal from decree of circuit court of Carroll county, entered April 25th, 1885, in the cause of *J. B. Johnson and others* v. *W. W. McGee and others*, and other causes heard together therewith. The decree being adverse to the claims of J. Q. McGee and Thomas T. McGee set up by cross-bill, they obtained an appeal to this court. Opinion states the case.

*James A. Walker,* for the appellants.

*Robert Crockett,* for the appellee.

HINTON, J., delivered the opinion of the court.

The material facts of this case are as follows: In July, 1881, one Frank A. Humes instituted a suit in equity in the circuit court of Carroll county to enforce the lien of a judgment against Wm. W. McGee, G. Hale and John Q. McGee, one of the appellants. The bill averred that Wm. W. McGee was the owner of three tracts of land, containing respectively forty, one hundred and fifty-seven, and two hundred and ninety acres, and that *John Q. McGee,* one of the appellants, and G. Hale owned no real estate. Process was duly served on all of the defendants, and Wm. W. McGee appeared and answered, admitting that he owned all of the real estate mentioned in the bill.

In March, 1882, James B. Johnson instituted suit in the same court against the same Wm. W. McGee and John Q. McGee, to enforce the lien of his judgment against the lands of the former. This bill also averred that Wm. W. McGee owned all the lands as stated in the suit of *Humes* v. *McGee and others,* just mentioned, and that John Q. McGee owned no real estate. Process was

served on all the defendants to this bill, and Wm. W. McGee again appeared and answered, but did not intimate that he did not own all of these three tracts of land. In each of these suits decrees were rendered by the court directing a commissioner to rent out the lands.

In July, 1882, Thomas Steel, a judgment creditor, instituted his suit in equity against Wm. W. McGee, to enforce the lien of his judgment. His bill sets out the lands owned by Wm. W. McGee substantially as stated in the before-mentioned causes.

The commissioner having reported that he was unable to rent out the lands for an amount sufficient to pay the judgments in these causes, the court, at its October term, 1882, heard the causes together, and rendered a decree for the sale of the lands. In February, 1883, Johnson filed an amended and supplemental bill, in which, after setting out the various proceedings that had been had in these causes, he stated that he had since learned the fact that the lands of Wm. W. McGee had been sold under proceedings in bankruptcy, and that Wm. W. McGee, the bankrupt, had purchased them; that the lands were afterwards resold for the payment of a balance of purchase money, and were again purchased by the said McGee; and that his assignee in bankruptcy claimed that there was still a balance of the purchase money upon the resale due him. But to this bill John Q. McGee is not made a defendant. Under this bill an account of liens and of the real estate of Wm. W. McGee was taken, and the commissioner reported Wm. W. McGee as the owner of all of these three tracts of land. At the taking of this account, Wm. W. McGee was present, but never suggested that these lands did not belong to him. At April term, 1883, this account was confirmed, and a decree was rendered for the sale of said lands. The sale, after due advertisement of the time and place thereof, was made on the 18th June, 1883, when the complainant, J. B. Johnson, became the purchaser at the price of $550. He complied with the terms of sale by paying to the commissioners the $113.35 required in cash, and executing

his three bonds with security for the deferred payments. On the 18th day of June, 1884, the purchaser paid off the first of these bonds to the receivers in the causes, who paid off the judgment of Thomas Steel in full, and paid the residue to Hartwell Alderman, assignee in bankruptcy of said Wm. W. McGee.

At this sale, John Q. McGee, one of the appellants, was present, but made no objection, and it was subsequently confirmed. by the court. Whereupon the said John Q. McGee, T. J. McGee and Wm. W. McGee filed a petition, which they asked might be treated as a cross-bill, and to this petition all the before-mentioned judgment creditors and all other creditors of Wm. W. McGee are asked to be made defendants. In this petition, John Q. McGee and T. J. McGee averred that the said Wm. W. McGee sold and conveyed to the said John Q. McGee, on the 1st day of March, 1878, a tract of ninety three acres, a parcel of the land sold by the commissioners as above stated, and that the deed therefor was duly recorded in the clerk's office of Carroll county on the 3d of October, 1882; and the petitioner, T. J. McGee, states that on the 14th of November, 1882, said Wm. W. McGee conveyed to him a tract of thirty (30) acres of said land, the deed for which was recorded in the said clerk's office on the day it bears date. They aver further, however, that they became purchasers of the said parcel of land conveyed to them respectively by mere verbal contracts with their said father long before said deeds were executed; that they had possession thereof under said verbal contracts; and that they lived thereon and made valuable improvements thereon while they held and owned said lands under these verbal contracts. They also aver "that the entire purchase money for said parcels of land was applied and appropriated to the payment of the purchase money due from Wm. W. McGee to his assignee in bankruptcy;" and that this was in accordance with the understanding had between them and their father at the time they made these purchases of land from him. They then pray that the decree of sale may be reversed and set aside, and that the pur-

chaser may be enjoined and restrained from executing his writ of possession, and that the sums of money paid by them on the lands may be declared a first lien on these lands, and that they may be substituted to the rights of the assignee in bankruptcy as to this lien.

To this petition and cross-bill the appellee and purchaser, J. B. Johnson, filed an answer denying that there were ever any such verbal contracts of sale as stated, or that either John Q. McGee or T. J. McGee had ever paid off any of the liens proved against the estate of their father in the bankrupt court as claimed, or that they had ever paid the purchase money for said parcels of land as alleged.

All of these causes then coming on to be heard together, the court, on the 25th of April, 1885, entered a decree dismissing their petition, and directing the sheriff, upon the application of the purchaser, to proceed to execute the writ of possession. And from this decree the said John Q. and T. J. McGee applied for and obtained this appeal.

The petition for appeal contains several assignments of error which it will be unnecessary to notice, as in the opinion of the court the evidence disclosed in the record signally fails to establish that the appellants, or either of them, ever purchased or paid for the parcels of land in question.

The contention of John Q. McGee is that he purchased the larger portion of the ninety-three acres from his father by verbal contract in the spring of 1874, received a title bond for it in December of that year, and that he paid for that tract in the years 1875 and 1876; and that he purchased the residue of the ninety three acres in the year 1876, received a title bond for it in April of that year, and paid for it during the same year. And that the purchase money for these two tracts, by express agreement, was paid over by his father to his assignee in bankruptcy. These statements are each and all flatly denied by the appellee, Johnson, in his answer. And yet, if we except the statements of John Q. McGee himself, who does say in his depo-

sition that he paid his father $150 for the first tract and $40 for the second, and that he saw his father pay over $40, part of this first sum, to his assignee at the first sale in bankruptcy—that is, on the .18th day of January, 1875—there is not a particle of direct testimony to be found in the record to prove that there ever was any such verbal contract as this pretended purchaser claims, or that any part of the alleged purchase price was ever paid by him either to his father or to his father's assignee. And even as to these statements of John Q. McGee, they are partially, if not entirely, disproved by the very notes which he has himself introduced as evidence of his payments to his father, which show, by amounts, dates and character of the endorsements thereon, that the whole of the purchase price of the first tract of land was *not paid in money,* and therefore could not have been *paid* over by the father to his assignee, and that no such payment as $40 was made by him to his father at the date of the first sale in bankruptcy, on the said 18th day of January, 1875.

It is true that he has taken the depositions of several witnesses, including two of his brothers, but all that they testify to is plainly hearsay, and not one single one pretends that he ever heard any contract between Wm. W. McGee and his son, John Q. McGee, for the sale and purchase of the land claimed by the latter, or that he ever witnessed any payment made by said John Q. McGee to his father, or for him on account of the said land.

But this is not all. For John Q. McGee, as we have seen, was a party to the original suits of Humes and Johnson, each of which was brought for the purpose of selling this land as the land of his father, and the fact that he stood quietly by and permitted this land to be claimed as a part of his father's, taken in connection with the further fact that he was present when the sale was made and made no objection to its being sold, coupled with the still further fact that he has failed to take the testimony of both his father and his father's assignee, which we may safely assume he would not have done if the testimony of

either would have benefitted him, goes far to show that the claims of this appellant are not simply unfounded, but absolutely false.

Passing now to the case of T. J. McGee, we find that it is open to the same character of objections. His claim is, to adopt the language of his deposition, that he "bargained for it," meaning the tract of thirty acres of land, "in 1878, but the writings were not drawn till 1879. I paid *about* $18 in 1879, to the best of my recollection, and paid the balance in 1880, 1881 and 1882. My father told me when I bought the land that he wanted the money to pay on his debts." Now this is all the direct testimony to be found in the record that there ever was any verbal contract for the purchase of this thirty acres of land, or that the alleged purchase price has been paid; and if we discard the testimony of John Q. McGee (which, after what we have already seen, is not to be regarded as entitled to any weight) that he "saw $10 of it," meaning the purchase money of $100, paid on his father's bankrupt debts, there is not a scintilla of evidence or testimony, except the statement of T. J. McGee himself, that he "paid *him*"—exactly whom he meant is doubtful—"$10 here at one of the sales," to show that any part of this alleged purchase money ever reached the hands of his father's assignee. But besides all this, this appellant was living there in close proximity to the place of sale and to his father, who seems to have been constantly talking with these sons about the payment of his creditors, and it is impossible for us to resist the conclusion that this appellant had actual notice of these suits and was a *pendente lite* purchaser, who is never a necessary party to a suit for the sale of land. *Philips* v. *Williams,* 5 Gratt. 259; *Price* v. *Thrash,* 30 Gratt. 515.

We conclude, therefore, that these alleged purchases, including the execution of the title bonds and notes, and the execution and recordation of the deeds, are nothing but clumsily-devised schemes on the part of these appellants to hinder, delay and defraud the creditors of his father.

But if it were not so, the proof that John Q. McGee had notice of the sale and of the original suits, and the presumption that T. J. McGee had notice of them, arising from his failure to deny that he had notice of them either in the petition for rehearing or his deposition being too strong to be overcome by anything less than positive proof, and these parties having waited until fifteen months after the sale was and twelve months after the purchaser had paid one-half of the purchase money before asserting any claim, are estopped from setting up the claim which they have undertaken to prefer. See 2 Pomeroy's Eq. Juris. §§ 804, 805, n. 1; Bigelow on Estoppel, 565; *Hill* v. *Woodward*, 78 Va. 765, 775, 776. In such a case there can be no pretense of a right to claim for the value of improvements. *Græme* v. *Cullen*, 23 Gratt. 295; *Woods' Ex'or* v. *Krebbs*, 33 Gratt. 691; *Hurn* v. *Keller*, 79 Va. 419.

There is no error in the decree appealed from, and it must be affirmed.

DECREE AFFIRMED.