# Richmond.

## STOVALL v. BORDER GRANGE BANK.

### December 13th, 1883.

1. PRACTICE IN CHANCERY—*Parties.*—All interested in relief sought by bill should be made parties—either plaintiffs or defendants.

2. IDEM—*Enforcing judgment lien.*—Judgment creditor need not exhaust his remedies at law, before going into chancery, to subject his debtor's land. Code 1873, ch. 182, ¿ 9; *Price* v. *Thrash*, 30 Gratt. 515.

3. IDEM—*Principal and surety.*—In suit to enforce judgment lien on lands of principal debtor and his sureties, principal's lands should be exhausted before subjecting that of sureties. *Horton* v. *Bond*, 28 Gratt. 815.

4. IDEM—*Idem—Idem—Receiver.*—In such suit a receiver should not be appointed of the lands of one surety before subjecting the lands of principal and before taking any steps against the lands of the co-surety.

5. PRINCIPAL AND SURETY—*Co-sureties—Contribution.*—Negotiable note ran thus: "Sixty days after date, we, W & Co., principal, and S & L, securities, promise to pay," &c.; the note was signed by L after the other parties had signed it, without the knowledge of S, and W & Co. agreed with L, also without the knowledge of S, "that there should be no trouble about the note, that W & Co. and S would take care of it,"

HELD:

 1. This is a joint promise. L is bound as co-surety with S, and bound to contribute.

 2. When successive endorsers all endorse for accommodation of maker, though at different times and without mutual agreement, they are co-sureties and in equity liable to contribution. Hence S's ignorance that L signed the note did not affect their relation as co-sureties.

Appeal from decree of corporation court of Danville, pronounced in the chancery cause of the Border Grange

Bank and Thomas J. Lee against J. T. Stovall and A. P. Whitfield.

The bank obtained a judgment against said Stovall, Whitfield and Lee for $1,500; and Lee obtained a judgment against Stovall and Whitfield for $5,880.40. Execution was issued on the first on 13th January, 1881. On this the sergeant made return on 7th March, 1881, "not executed by order of the plaintiffs' counsel," and that counsel endorsed the execution with a direction that it should not be levied as to any of the parties. Whereupon the bank and Lee filed their bill against Stovall and Whitfield to subject the lands of Stovall to payment of the judgments, alleging that Whitfield had conveyed his property to secure Stovall as his surety; that Stovall owned large landed property, consisting of many valuable lots in Danville with improvements and other large tracts in different localities; alleging that Stovall and Whitfield should on oath give a full inventory of all property owned by them liable to said judgments and executions, and to state where and in whose possession the same was, in order that it might be sold to pay their debts, and praying that a receiver might be appointed to take charge thereof. Stovall demurred to the bill for want of proper parties defendants, and filed a plea to same effect, and answered with inventory of property, real and personal, estimated at over $60,000, yielding an income of over $3,000. Testimony was taken, the depositions filed, and the cause coming on to be heard, the court overruled the demurrer and the plea; decided that Stovall was not entitled to contribution from Lee on the first judgment; directed an account of the real estate of Whitfield and of the liens thereon; also an account of the real estate of Stovall and the liens, and an inquiry whether the rents and profits of such estates, respectively, would in five years pay the liens, and appointed a receiver to collect the rents on the estate of Sto-

vall. From this decree Stovall applied to this court for an appeal, which was allowed 24th August, 1881. The remaining facts and the positions taken are fully stated in the opinion.

*E. E. Bouldin,* for the appellant.

No counsel for appellees.

LACY, J. (after stating the case), delivered the opinion of the court.

The first ground of exception to the decree complained of is raised by the demurrer, that the bill on its face does not show that a resort to equity was necessary and proper. Executions had issued on the judgments, which were not made part of the bill, and the bill does not show what had become of the executions, although it alleged that they had been issued, and that garnishments had issued on the executions and judgment recovered on them, and there is no statement of how much had been thus recovered; and that this court should reverse the whole decree for that reason. Also, that the lands of the appellant were ordered to be sold, when it was neither alleged or proved that the complainants had exhausted their remedy at law to obtain satisfaction of their judgments out of the personal estate of the appellant.

By the ninth section of chapter 182 of the Code of 1873, which is the act of 1849, it is provided that "the lien of a judgment may always be enforced in a court of equity. If it appear to such court, that the rents and profits of the real estate, subject to the lien, will not satisfy the judgment in five years, the court may decree the said estate, or any part thereof, to be sold, and the proceeds thereof applied to the judgment." This court, in a late case, quoting the

above statute, declared that, looking to the policy of the legislature and to the broad and comprehensive language of the enactment that a judgment creditor, if he should so elect, might resort to a court of equity to enforce the lien of his judgment against the real estate of his debtor, without first proceeding by execution at law to subject the personal estate, or assigning any reason for not doing so.

The remedy against the real estate in equity is declared, not dependent upon the inadequacy of the legal remedy to satisfy the judgment out of the personal estate, or the insufficiency of such estate for that purpose, but that it may always be resorted to, whether there be or be not personal estate of the debtor sufficient to satisfy the judgment.

The remedy is given in general terms, and if it had been intended to limit its application to cases in which there was no personal estate of the debtor, or when such estate was not sufficient to satisfy the judgment, it would doubtless have been so provided in express terms. The court goes on to say that all the property of the debtor, except what is exempt under the law, is liable for the payment of his debts, and if the debtor feels aggrieved by the attack upon the real estate, he can, if he has enough personal property, proceed to sell it himself and pay the debt, and so save his real estate. The ruling of the court below upon this point was in accordance with the decision of this court in that case. *Price* v. *Thrash*, 30 Gratt. 515. The second ground of demurrer was that one of the defendants in the suit at law, in which the judgment was obtained, and who was one of the judgment debtors, was not made a party defendant in this suit. All persons who are interested in the relief sought by a bill should be made parties defendants to the bill, unless they are already joined as plaintiffs, and the prayer for process must be so framed as to bring all persons interested in that relief before the court, either as plaintiffs or defendants. This is elementary.

But the complaint here is that T. J. Lee is not a party defendant, while it is admitted that he is joined as a party plaintiff. The demurrer was properly overruled on that ground also. The plea being dependent upon the same question, was also properly overruled. The first ground of exception upon the merits was that the court erred in deciding that Lee was not equally bound with Stovall under the judgment on the $1,500 debt, and that, though Stovall should pay the whole debt, he would be entitled to no contribution from Lee.

This question depends upon the evidence. The note was as follows:

DANVILLE, VA., June 3d, 1880.

" $1,500.

"Sixty days after date, we, A. P. Whitfield & Co., principal, and John T. Stovall, Thomas J. Lee, securities, promise to pay Border Grange Bank, or order, fifteen hundred dollars, without offset, negotiable and payable at the banking house of Border Grange Bank, Danville, Va. Value received. We hereby waive our homestead exemption as to this debt.

"A. P. WHITFIELD & Co.
"JNO. T. STOVALL.
"THOS. J. LEE."

Lee, in his deposition, says he signed this note as security, along with Stovall, to enable Whitfield to raise money to pay him, Lee, a debt of $1,629.27; that Whitfield discounted the note, and the next day paid him his debt; and that Whitfield promised that there should be no trouble about the note; that he, Whitfield, and Stovall, would take care of it. It is not pretended that Stovall was present or knew anything about the promises of Whitfield, outside of the note.

One witness testifies that he declined to sell a lot of tobacco on thirty days' time to Whitfield & Co., but sold it to Lee, and Lee paid for it.

The cashier of the bank testifies that the bank refused to discount the $1,500 note without Lee's name, and did discount it with Lee's name, and that the bank considered Lee bound for the note.

We are not favored with any note of argument by the appellee, nor with the reasons of the court for its opinion that Lee was not equally bound with Stovall upon this note. The note itself, Lee's own act, declares Lee to be a security on the note, and Lee's deposition shows that he was solicited to become a security upon the note, because the bank refused to discount it without additional security. The bank must have so regarded him when suit was brought upon the note. Under the statute the bank, if so inclined, might have brought suit against all or one of those jointly liable on the said note.

Upon what principle can Lee be held not to be a co-security on the note? Endorsers are not co-securities unless their endorsement is joint, but are severally and successively liable. But this promise to pay at the banking house is joint; it is *we*, A. R. W. & Co., J. T. S. and T. J. L., *securities*, promised to pay, &c. And this Lee signs. The note itself, in terms, fixes the relations of the parties. Lee contracts to be a surety; the note shows it; his deposition admits it. And, as has been said by the court of appeals in another State: "If a person who pledges his responsibility to enable another to obtain credit, wishes to avail himself of a means of discharge which is peculiar to commercial paper, he must see to it that he becomes a party to the security in such a manner as will entitle him to the benefit and the privileges and immunities of commercial contracts. A party who unqualifiedly engages to be security for another has no equity to ask that his contract shall be qualified by annexing the incidents of a strict endorsement, instead of being construed as absolute as his *promise*,

upon the faith of which the credit was given." *Chaddock* v. *Vanness*, 35 N. J. p. 527.

The fact which seems to be relied on, that Stovall did not know that Lee was to sign the note, does not affect the question in this case. Lee did sign as co-security, and the bank, the creditor, has the right, and would doubtless hold Lee liable, if he were the only source to which it could look for payment of the debt. And it is a familiar principle with courts of equity that the security, paying a debt, is intitled to be subrogated to all the rights and remedies of the creditor, and this applies between co-securities, and one paying, another equally bound is compelled to make contribution.

"There is no doubt that if the party add the word 'surety' to his name upon the face of the paper, it is a distinct indication of the character in which he signs, and that he will be treated as a surety as against all parties." Daniel on Negotiable Instruments, vol. 2, § 1332; *Hunt* v. *Adams*, 5 Mass. 358; *Robison* v. *Lyle*, 10 Barb. 512; Edwards on Bills, 572.

We have said that it is of no consequence in this case whether Stovall knew that Lee had signed it or not, for where successive endorsers all endorse for accommodation of the maker, though at different times and without communication or mutual understanding, they are in equity co-sureties and subject to common contribution. 2 Lom. Dig. p. 173; *Daniel* v. *McRae*, 2 Hawks, 590.

In *Stout* v. *Vause*, 1 Rob. 179, a joint and several bill was executed by a principal and several sureties to enable the principal to discount at the bank. The purpose of the bill at bank could not be obtained because, according to the rules of the bank, a surety resident in the place was required, the seven sureties on the paper all being residents out of that place. The principal thereupon applied to Zane, a resident, to become his surety. Zane, having

adopted it as a rule of life never to become endorser for any person, but being willing to accommodate the principal, applied to Vause to become bound as such endorser, with an assurance to Vause that if the principal did not pay off the note when due he (Zane) would pay it off for him. Under this assurance Vause executed the note, which was discounted for the principal, who failed to pay the same when it became due, and thereupon Zane, whose name was not upon the note, paid it off.

All these arrangements between the principal and Zane and Vause were made without the knowledge or agreement of the other sureties. It was adjudged by this court that Zane was to be regarded as one of eight co-securities, and that he was entitled to contribution from all except Vause. Of course not from Vause, because he had agreed to be responsible in the lieu and stead of Vause, and had paid for him.

Now, suppose Lee had paid off this note in question, would Stovall be entertained to say he did not know Lee was on the note, and that for that reason he declined to contribute. Lee would be entitled to have contribution in such case, and why? Because he had paid as co-security, and Stovall was bound to contribute as co-surety.

Now, then, if Stovall is made to pay all, shall not Lee contribute his due share? And why should not the corporation court, with both parties before it, decree accordingly in the first instance, without discriminating against Stovall and leaving him to his suit against Lee?

But the court below not only decreed that Stovall should pay the whole debt, but that he should have no contribution from Lee. We think this decree was therefore erroneous.

Another ground of complaint and assignment of error is that the court went directly against the surety without first, ascertaining and subjecting the lands of the principal.

In the case of *Horton and als.* v. *Bond*, 28 Gratt. 815, it is aptly said by the court: "While it is true that the sureties, as well as their principal, are all bound by the complainant's judgment, and he has the undoubted right to resort for satisfaction to the property of each and all of them, yet in equity, in a suit in which all the parties are alive and before the court, the court will respect the equities of the parties *inter sese*, and administer them upon the principles peculiar to the forum, as far as that can be done without too great delay, and without prejudice to the rights of the creditor. The principal debtor's lands should be *first* subjected to the exoneration of the lands of the sureties.

This case was cited approvingly in *Gentry* v. *Allen*, 32 Gratt. 254, and the court in that case said: " The decree of the circuit court is erroneous in decreeing against the property of only one of the sureties. All three of these were made parties to the bill, and no satisfactory reason is given for the failure to decree against each his due proportion of the appellee's judgment." And so say we in this case.

It was error to appoint a receiver in this cause to proceed to intercept the revenues from one surety's lands, before first subjecting the lands of the principal, and before taking any steps against the co-surety. It does not appear from this record that there was any necessity for the appointment of a receiver in the cause. The judgments bound lands which are estimated at many times the amounts of the same; executions had issued, and the tenants had been convened by garnishee summons, and it does not appear that the ordinary process of the law was likely to prove unavailing.

We are of opinion to reverse the decree and remand the cause to the corporation court of Danville for further proceedings to be had therein, in accordance with this opinion.

DECREE REVERSED.