# CHARLESTON.

## YOUNG v. SEHON.

Submitted January 26, 1903.    Decided April 11, 1903.

<div style="float:right">

| 53 127 |
|--------|
| e 60 318 |

| 53 | 127 |
|----|-----|
| 64 | 10 |

</div>

1.  NON-NEGOTIABLE NOTE—*Endorser.*

    Where a non-engotiable note bears on its back the signatures of the promisee and another person, in such manner as would make them first and second endorsers, respectively, if the note were negotiable, the parties so signing are not deemed to have thereby made a complete and specifiic contract, analogous to the contract of commercial indorsement, making them liable as guarantors in the order of their signatures; and parol evidence is admissible to show the relation which they bear to one who asserts a liability against them on such note.   (p. 129).

2.  NOTE—*Endorsers.*

    When such paper does not represent an existing debt, but is made for the purpose of obtaining on it a loan of money for one, or all, of the parties to it. a person who makes such loan on the faith of it and takes it, may, in the absence of an agreement to the contrary of which he has notice, treat those whose names are on the back of it as co-promisors with him who signed on its face, or as guarantors, at his election.   (p. 134).

Action by Sarah F. Young against Columbus Sehon and others.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

JOHN W. ENGLISH, and RANKIN WILEY, for plaintiffs in error.

C. E. HOGG and J. U. MEYERS, for defendant in error.

POFFENBARGER, JUDGE:

J. N. Camden and J. P. R. B. Smith complain, on a writ of error, of a judgment rendered against them in the circuit court of Mason County, and in favor of Sarah F. Young, on a non-negotiable promissory note for $1,000.00, payable one year after date to the order of said Smith, dated December 12, 1893, and signed on the face thereof by C. Sehon, and on the back thereof, first by J. P. R. B. Smith and then by J. N. Camden.

The trial was by the court in lieu of a jury and the oral evidence consisted of the testimony of said Smith and James L. Knight. The former testified that the note had been mailed to him from Huntington by Sehon, fully made out with the request that he indorse it, and write a letter to Camden asking him to endorse it, which was done. Upon the return of the note by Camden, Smith took it and went to Knight for the purpose of obtaining the money on it for Sehon. Knight testified that he had in his hands, for the purpose of loaning it, $850.00 belonging to Mrs. Young, the plaintiff, to which he added $150.00 of his own money, took the note and delivered to Smith his check for $1,000.00, payable to Sehon, which was sent to him by Smith; and that afterwards, on the repayment by Mrs. Young of the $150.00, he delivered the note to her.

The action was *assumpsit* against Sehon, Smith and Camden, treating Smith and Camden as original promisors with Sehon for his accommodation and to enable him to obtain upon the note said loan. Plaintiffs in error plead *non-assumpsit* and Sehon interposed a special plea, setting up his discharge in bankruptcy, and judgment was rendered against the plaintiffs in error only.

Against this judgment, it is urged by the attorney for Smith, that plaintiffs in error, by placing their names on the back of the note, became guarantors and could not be sued jointly with the principal debtor, the contract of guaranty being collateral and binding the guarantor only in the event of the failure of the party owing the debt to pay it and the exercise of due diligence on the

part of the holder to collect from him. For Camden, it is contended that he and Smith become indorsers or guarantors in the order in which their names are signed on the back of the note.

In the absence of any parol evidence, the note indicates that it was made by Sehon to Smith by whom it was assigned to Camden. Was parol evidence admissible to show the relation of the parties to the note? "Whatever diversities of interpretation may be found in the authorities, where either a blank endorsement or a full endorsement is made by a third party on the back of a note payable to the payee or order, or to the payee or bearer, as to whether he is to be deemed an absolute promisor or maker, or guarantor or indorser, there is one principle upon the subject almost universally admitted by them all, and that is, that the interpretation of the contract ought in every case to be such as will carry into effect the intention of the parties; and in most instances is conceded that the intention of the parties may be made out by parol proof of the facts and circumstances which took place at the time of the transaction." Mr. Justice Clifford in *Rey* v. *Simpson,* 22 How. (U. S.) 341, 349. In the syllabus of that case it is held that the weight of authority is in harmony with the principle that parol proof of the circumstances under which such endorsement was made is admissible. In 4 Am. & Eng. Enc. Law, 2 Ed., 488, it is said that, "In all the States, it would seem, however, that, between the immediate parties, evidence is admissible to show the exact time of endorsement." There can be no doubt that parol evidence was admitted for that purpose in *Kearnes* v. *Montgomery,* 4 W. Va., 29; *Burton* v. *Hansford,* 10 W. Va. 470; *Long* v. *Campbell,* 37 W. Va. 665; *Thomas* v. *Linn,* 40 W. Va., 122; *Goff* v. *Miller,* 41 W. Va., 683; *Roanoke Co.* v. *Watkins,* 41 W. Va., 787; and *Miller* v. *Clendennin,* 42 W. Va., 416. The report of the case in *Bank* v. *Hysell,* 22 W. Va. 142, indicates that no parol evidence was offered in that case. In *Quarrier* v. *Quarrier,* 36 W. Va., 310, the parol evidence offered to establish facts fixing upon one of the parties to the note liability as an original promisor, was excluded because of the incompetency of the witness to testify against the alleged co-promisor, he being dead, and the transactions to which the witness proposed to testify having been personal between them. Such is the rule in Virginia, also. *Hopkins* v. *Richardson,* 9 Grat. 485; *Welsh* v. *Ebersole,* 75 Va.,

651.  This doctrine is so well settled that it is useless to cite authority upon it, but the following may be consulted as leading cases on the subject, all holding that parol evidence is admissible for such purpose: *Good* v. *Martin,* 95 U. S. 90; *Carazos* v. *Trevino,* 6 Wall., 773; *Hopkins* v. *Leek,* 12 Wend. (N. Y.) 105; *Essex Co.* v. *Edmunds,* 12 Gray, (Mass.,) 273; *Hall* v. *Cazenove,* 4 East. 477; *Cooper* v. *Robinson,* 10 Mees. & W. 694.

Moreover it is well settled by the decisions of this Court, as well as by those of the courts generally, that any agreement between the parties to a note bearing irregular indorsements, as to the extent of their liability on the note, may be shown by parol evidence and will be enforced as to all who are parties to the agreement. *Long* v. *Campbell,* 37 W. Va., 665; *Miller* v. *Clendennin,* 42 W. Va., 416; *Burton* v. *Hansford,* 10 W. Va., 470, 481; *Watson* v. *Hurt,* 6 Grat. 631; *Roanoke* v. *Watkins,* 41 W. Va., 787.

Before attempting to ascertain the law applicable to this case, it is proper to state that the facts upon which this judgment is predicated differ somewhat from those of other cases which have been decided by this Court, in which the maker and indorsers have all been held liable as co-promisors. In those cases, the indorsements were made before the notes were endorsed by the payee.  Here, the note itself imports, and the evidence shows, that the payee endorsed first.  In the absence of parol evidence, showing a different agreement or facts from which the law would raise a different obligation, the undertaking on the part of Smith and Camden would be colateral and not joint with Sehon. *Quarrier* v. *Quarrier,* 36 W. Va., 310.  In *Burton* v. *Hansford,* *Miller* v. *Clendennin,* *Long* v. *Campbell* and *Roanoke Co.* v. *Watkins,* in all of which the endoresrs were held to be co-promisors, the third parties endorsed before the payee did so.  In most, if not all of them, the payees became the holders of the notes for value and did not endorse at all.

In each of these cases, the paper itself disclosed the irregularity of the endorsements on the back.  Being in the hands of the payee as holder for value, and without his endorsement on the back of it, the theory of successive indorsements or assignments, corresponding to the positions of the names on the back of it, was negatived by mere inspection of the instrument; and upon a showing by parol evidence, that the indorsements

were made before delivery, the law holds that the indorser is *prima facie* an original promisor or guarantor, as the payee may elect, on the legal presumption that one who indorses, at the time it is made, a note not made payable to him, thereby indicates an intention to bind himself for the payment of it in some form, and that, if in such case, he has failed to indicate in what form he intendes to bind himself, it is fair to presume that he intended to be bound in any manner that the payee might elect. The necessity for the admission of parol evidence, where the instrument itself shows the irregularity of the endorsements, is apparent. Here, however, the positions of the names on the paper indicate that Sehon executed his note to Smith and that Smith assigned it to Camden, and Mrs. Young comes forward, claiming to have acquired it for a valuable consideration. If she had shown that she had given Camden the money on it, without more, his undertaking would have been collateral.

No irregularity of indorsement being disclosed by the paper itself, the question is whether such *iregularity* may be shown by parol evidence, so as to let in further evidence of that kind to show the intention of the parties. While this is not affirmed in the case of *Quarrier* v. *Quarrier,* cited, the opinion of the Court intimates in the following language, that it may be done: "If these be the facts, Quarrier might be liable for the note as joint promisor or guarantor, according to the time of his signing or understanding between the parties." In *Whitehouse* v. *Hanson,* 42 N. H. 9. Bell, Chief Justice, said: "It is a presumption of law that the parties to a promissory note stand to each other in the relation in which the signatures appear. The signers on the face of the paper are taken to be joint principals, unless some are designated as sureties; and the signers on the back to be indorsers, in the order in which the names are written, if nothing in the terms of the indorsements indicate the contrary. In the case of a *bona fide* holder of such a note, without notice, this presumption is conclusive. But, generally, this presumption is not conclusive as to others, but is merely a *prima facie* presumption, which stands till the contrary is proved." For the assertion that the presumption is conclusive as to *bona fide* holder, without notice, he cites *Bank* v. *Kent,* 4 N. H. 221, and *Nichols* v. *Parsons,* 6 N. H. 30. Both of these

cases hold that the presumption in favor of such holder against agreements and equities among the makers and indorsers, of which the holder had no notice, and which, if enforced, would be prejudicial to him, is conslusive. *Whitehouse* v. *Hanson* presented the same question and it was disposed of in the same way. Hence, there is no ground for an inference that the language quoted means that the holder cannot show by parol evidence the actual nature of the transaction, as to consideration, time and intent, to the extent of making the parties liable to him in a manner different from that indicated by the mere positions of the names on the paper.

Speaking of the operation upon negotiable instruments, of the rule against the admissibility of parol evidence to vary the terms of a written contract, Daniel Neg. Inst., section 720, says: "The language of the rule implies its limitations, for it does not extend to exclude evidence offered to show want or failure of consideration, or to impeach the original or present validity of the endorsement on the ground of fraud. There are three classes of cases in which evidence for this purpose is admissible, and it will be seen that it does not contradict or vary the contract imported by the indorsement, but impeaches it as a valid indorsement to the extent claimed by the endorsee. Thus, firstly, it may be shown that the indorsement was without consideration, as for instance that it was for the indorsee's accommodation, or merely to transfer the legal title to the indorsee, he being in fact the owner of the paper; or that it was indorsed for collection, where the form of indorsement does not show that fact, or that it was indorsed merely to perfect an arrangement between the maker and indorsee. And where several successive indorsers agreed to be liable as joint indorsers and co-sureties, an extension of this principle would admit the facts to be shown, as they reveal the extent and nature of the consideration."

Section 707 of the same work says, "There is no doubt that, if a note be made payable to the order of the payee, and is indorsed by him, that his liability will be that of an indorser, and not that of a maker. If subsequent to his name, there appears the name of another person indorsed upon it, such person cannot be regarded in any other light than as indorser, and no parol evidence will be admissible, as against a *bona fide*

holder without notice, to show that he intended to bind him-
self in a different character. This view of the law rests upon
the fact that there is no ambiguity in the position of his name,
and none in his relation to subsequent parties to the instru-
ment. Upon its face the instrument evidences that he inten-
ded to bind himeslf as an indorser, for it purports to have
been regularly trasnferred to him by the payee's indorsement,
and by him transferred, by his own indorsement, to the in-
dorsee. And unless he has intimated an intention to become
liable as a surety or guarantor, by some expression to that ef-
fect, he will very clearly be bound as an indorser, and be enti-
tled to require demand and notice as a condition precedent to
his determinate liability. The form of the contract must at
least *prima facie* determine its construction."

Then section 707b says, "If a party not the payee, at the
inception of the note puts his name on the back of it, and the
payee afterward indorse it over such party's name, the latter
will then be second indorser, and his liability cannot be varied
by parol evidence. And the like result is reached if the payee's
name be left blank, and the holder of the note in negotiating
it fills it up with the name of the party who has signed his
name on the back.'

On the subject of irregular indorsements, such as were
found in the case of *Burton* v. *Hansford, Long* v. *Campbell,
Miller* v. *Clendennin* and *Roanoke Co.* v. *Watkins,* the same
author says, at sections 709, 710 and 711: "When a note is
made payable to the order of the payee, and the name of an-
other appears indorsed in blank upon it, and was indorsed be-
fore the note was delivered to, or indorsed by, the payee, a very
different question, and one upon which the authorities are very
muct at issue, arises. In such cases such person does not ap-
pear upon the face of the paper to have held, and to have
transferred the title, but rather to have placed his name upon
its back to add strength and credit to it, and thus render it
more easy of circulation; and the inquiry is presented whether
he intended to bind himself for its payment as a joint maker
or surety, as a guarantor, or only as an indorser, whose liabil-
ity can only be fixed by due demand and notice. If the note
be not negotiable, it is plain that such party cannot be regar-
ded as an indorser, for the simple reason that there is no such

thing as an 'indorsement,' in its strict and proper commercial sense, of any other than negotiable paper."

"When the note is negotiable the question is by no means capable of such easy and satisfactory solution; but whatever diversities of interpretation may be found in the authorities on the subject, they very generally concur, though not with entire unanimity, that, as between the immediate parties, the interpretation ought to be in every case such as will carry their intention into effect, and that their intention may be made out by parol proof of the facts and circumstances which took place at the time of the transaction. If the person who places his name on the back of the note before the payee intended at the time to be bound to the payee only as a guarantor of the maker, he shall not be deemed to be a joint promisor or an absolute promisor to the payee. If he intended to bind himself as a surety or joint maker of the note, he will not be permitted to claim afterward that he was only a guarantor. And if he intended to be bound only as an indorser, the better opinion is that this also may be shown as between him and the payee."

"The ground upon which parol proof of intention and agreement in such cases is admitted is, that the position of the name upon the paper is one of ambiguity in itself—that it is not a complete contract as is the case of an indorsement by the payee, which imports a distinct and certain liability; but rather evidence of authority to write over it with the contract that was entered into; and that parol proof merely discloses and brings to light the terms of the unwritten contract that was made between the parties."

An exception is admitted by Mr. Daniel at section 703, where he says that, "When several persons indorse a bill or negotiable note in succession, the legal effect is to subject them as to each other in the order they indorse. The indorsement imports a several and successive, and not a joint obligation, whether the indorsements be made for accommodation or for value received, unless there be an agreement *aliunde* different from that evidenced by the indorsements. When the successive indorsements are for accommodaiton of other parties, the indorsers for accommodation may make an agreement to be jointly and equally bound, but whoever asserts such an agreement must prove it. In cases, therefore, in which no such

agreement is proved, the indorsers are not bound to contribution amongst themselves, but each and all are liable to those who succeed them." On this proposition, he cites *Hogue* v. *Davis*, 8 Grat. 4; *Bank* v. *Bierne*, 1 Grat. 265; *Bank* v. *Vanmeter*, 4 Rand., 553:; *Chalmer* v. *McCurdo*, 5 Munf., 252; and numerous other cases which bear out fully the text. A contrary doctrine is asserted in *Stovall* v. *Bank*, 78 Va., 194, but the declaration is *obiter*.

While the rule excluding parol evidence to show liability of indorsers different in extent or character, from that indicated by the positions of their names, is well supported by decisions of the courts of New York, Illinois, Minnesota, North Carolina, Indiana, Massachusetts, Missouri, Texas, Tennessee and Rhode Island, there is a vast amount of authority against it. Randolph on Commercial Paper, at section 834, says, "This show of intention seems, however, to conflict with the fact that such signature is generally made 'for the further assurance of the payee, whereas his position *as indorser* is naturally after the payee or first holder, and tends to negative all idea of liability to the payee;" and then says the view is "approved as 'the New York Rule' by Judge Daniel." At section 838, Rand. Com. P. cites a long list of cases holding that, where the paper discloses no ambiguity on its face, parol evidence of the time of the indorsement and the consideration may be introduced. One of these, *Sturtevant* v. *Randall*, 53 Me. 149, holds that "The contract *implied* from one's placing his name in blank upon the back of a negotiable promissory note, is not a written contract so far complete in itself as to exclude parol evidence to show his connection with such note. As between the original parties to such contract, or those having their rights, parol evidence is admissible to prove the circumstances which will determine its character." In the opinion, Barrows, J., says, "From a series of decisions in Massachusetts and this State, it may be deduced as settled law that, when one, not the payee of a negotiable promissory note, indorses it on the back, *at its inception,* the legal presumption arising from the act is that it was done for the same consideration with the written contract on the face of the note, and the person thus indorsing will be holden as a surety and an original promisor; if the same act is done *at some subsequent time, but without a previous indorsement*

by the payee, there is no presumption as to the consideration, and the person thus indorsing will be held, if there was in fact a consideration for his contract, as guarantor; if the same blank indorsement is made *after* an indorsement by the payee, then the person making it is to be regarded as a subsequent indorser; and, *in the absence of date or proof,* it is presumed that the indorsement was made at the inception. Now, that these presumptions have not been considered, as between all the parties to negotiable paper, to belong to that class of legal presumptions which admit of no opposing evidence, is manifest from the tenor of the reasoning in many of the cases above referred to." Then after quoting from two Massachusetts cases, he says: "But, aside from numerous *dicta* of similar import, it is too plain to need elucidation that in such cases parol evidence must be resorted to, in the absence of anything in writing, to determine *what the contract actually was,* whether that of an original promisor, guarantor, or indorser to transfer the title, and that this is no infringement of the wholesome rule that parol evidence shall never be received to vary or contradict a written contract."

Another case affirming with equal strength the like doctrine is *Bank* v. *Marble Co.,* 61 Vt., 106, decided in 1888. Rowell, J., delivering the opinion of the court, said: "But in this State no distinction has ever been made in this behalf between regular and irregular indorsements in blank of third persons, but they have alike been held, *prima facie,* to impose the obligation of maker. In most if not all of the cases before *Sylvester* v. *Downer,* 20 Vt., 355, the indorsements were irregular, which brings the cases in line with a great majority of the cases in other jurisdictions. But in *Sylvester* v. *Downer* the defendant's indorsement was irregular, that is, his name was written in blank under the names of the payees. This seems to be so from the case, but we have a copy of the note before us, which shows it to be so. Downer was sued as sole maker of the note, and although it is true that the evidence tended to show, and the jury found, that he intended to assume an unconditional obligation to pay the note according to its tenor, yet the court adverted to that fact only as putting at rest all pretence that it was not understood that he assumed the obligation his signature imported, and said: On being produced,

the note shows the name of the defendant indorsed upon it, and also the names of the payees. This, according to the decisions of this court repeatedly made, imposes upon the defendant the obligation of maker, with this difference, that his undertaking being in blank, as between him and the parties to it, it is susceptible of being controlled by oral evidence of the real obligation intended to be assumed at the time of signing." See also *Ballard* v. *Burton,* 64 Vt. 387, decided in 1892.

*Chaddock* v. *Vanness,* 35 N. J. L. 517, asserts with emphasis, the doctrine of the Maine and Vermont courts. Depue, J., said: "The admissability of parol evidence to vary the legal import of commercial paper is forcibly advocated by Professor Parsons. 2 Parsons on Notes 520. He maintains that its competency is limited to exceptional cases. *Ib.* 23. The exceptional cases are those in which the evidence tends to establish a defect in the consideration, or the instrument is informal, and therefore no commercial contract is created by the indorsement, *per se.* It is upon the principle of this exception that the evidence received by the court in this case was properly admitted. The defendant is not named in the note or as payee. The first indorsement of a note by a person not the payee, *per se* creates no implied or commercial contract whatever, although the party may be subjected to the liability of a second indorser, if the payee should afterwards indorse the note, and it should come to the hands of a *bona fide* holder before maturity. *Crozier* v. *Moore,* Spencer 256. As between the parties, a liability can arise only from the facts and circumstances which occurred at the time of the transaction. Whether any contract was made, and what the character of the contract is, must be determined by the intentions of the parties as ascertained by parol evidence of the circumstances under which the indorsement was made. Parol evidence offered for that purpose is not objectionable on account of a tendency to vary a written contract, when no contract arises except upon such evidence." See also *Hayden* v. *Weldon,* 14 Vroom (N. J.,) 128. But *Johnson* v. *Ramsey,* 14 Vroom, 279, holds that "An accommodation endorser cannot set up, in a suit against him by his endorsee, that there was an agreement between them at the time of putting their names on the paper that such endorsement should constitute a joint, and not a successive, liability." So

in *Foley* v. *Brewing Co.*, 61 N. J. L., 428, a payee *who had* indorsed a note for the accommodation of the maker before it was delivered to the holder, was held to be a commercial indorser, just as the paper indicated.

*Cecil* v. *Mix*, 6 Porter, (Ind.,) 478, opened wide the door for parol evidence, but the supreme court of that state long ago adopted the New York rule. *Vore v. Hurst*, 13 Ind., 551; *Roberts* v. *Masters*, 40 Ind., 463. So in Minnesota, it was once held that "Parol evidence is admissible to prove in what capacity a party writes his name on the back of a note—whether as indorser, guarantor or surety, when the controversy is between the original parties, or to determine the mutual liability of the indorser when there are several." *Pierse* v. *Irvine*, 1 Minn., 369. But in *Coon* v. *Pruden*, 25 Minn., 105, the court held that "A member of a firm made a promissory note, payable to the order of the firm. *Held*, that the relation of the firm to the note is that of indorser, and cannot be varied by parol, and that a demand upon the maker is necessary to charge the firm."

Counsel for defendants in error cite certain Ohio cases which they claim sustain their position. Among them, is *Douglass* v. *Waddle*, 1 O. Rep. 191, holding, upon evidence of mere local useage, admitted that accommodation indorsers of a promissory note are co-sureties, among whom contribution may be enforced. This was narrowed and virtually overruled in *Williams* v. *Bosson*, 11 O. Rep. 62, but it affirms the admissibility of parol evidence. Another is *Robinson* v. *Abell*, 17 O. Rep.., 36, holding, upon a note executed by John W. Abell to Wm. Robinson against Palmer as a joint-maker, that there could be no recovery against Palmer as maker without proof that the indorsement was made at the time of the execution of the note. This asserts the admissibility of parol evidence, but the court virtually certifies in its decision that the irregularity of the indorsement was apparent without the aid of extrinsic evidence, and that would let in parol evidence anywhere. In the syllabus, Palmer is described as a stranger to the note. Another is *Ewan* v. *Brooks-Walerfield Co.*, 55 O. S. 596, holding that the indorsement of the maker's name on the back of a promissory note payable to his own order, and its delivery in that form to another for value, are essential parts of the exe-

cution of the note, and that the person so making, indorsing and delivering for value is liable as maker. But the court held that the irregularity of the indorsement was disclosed by the note itself. Williams, C. J., said: "The note being payable to the order of the maker was incomplete in its execution until indorsed by him and delivered for value. * * * There is here no room for any inference that the note had been previously transferred by the maker to the company, and thereafter indorsed by it in order to transfer the title." Another is *Seymour* v. *Mickey,* 15 O. S., 515, in which it was permitted to be shown by parol evidence in a suit upon a note bearing regular indosements, that an indorser signed his name on the back of the note, at the time of its execution, for the purpose of giving the payees additional security for the payment of the note, and had refused to sign it as a joint maker, whereupon he was held to be liable as an indorser and entitled to demand and notice. This case does not appear to have ever been expressly overruled, although, in *Cummings* v. *Kent,* 44 O. S. 92, it has since been held that "Evidence of a parol agreement, prior to or contemporaneous with the drawing and delivery of a bill of exchange, that the drawer is not liable as such, is inadmissible." The proof offered was that there was a parol agreement that the drawer was not to be liable as such.

Enough has been said to clearly show that, if the case were governed by the rules applicable to negotiable paper, there is respectable authority for deciding the case either way, but the weight of authority would undoubtedly make it impossible to hold the plaintiffs in error liable as joint makers of the note, in the present *status* of the case. But the note is not negotiable, and the inquiry now is whether a different rule applies, and, if so, what that rule is. Section 1 of Daniel on Negotiable Instruments draws a very clear distinction between the two classes of paper. In the third clause of which it is said: "By the common law, an instrument under seal imports a consideration, by virtue of the solemn ceremony of its execution; and no other non-negotiable instrument does. A bill of exchange, however, by the usages of merchants, also *prima farcie* imports a consideration; and now by statute promissory notes of a certain kind are placed on the same footing. As between immediate parties, the true state of the case may be shown, and the

presumption of consideration rebutted. But when a bill of exchange or negotiable note has passed to a *bona fide* holder for value, and before maturity, no want or failure of consideration can be shown. Its defects perish with its transfer; while, if the instrument be not a bill of exchange or negotiable note, they adhere to it in whosesoever hands it may go." In the first clause of said section he shows that a negotiable instrument is a *res,* a thing of value, title to which may be held and transferred, and that when it goes into the hands of a *bona fide* holder without notice of any defect, he may hold it against the world, while in the case of a non-negotiable instrument the true owner may identify it and reclaim it from anybody who may hold it as an innocent purchaser from one who has stolen it or otherwise come into possession of it wrongfully.

Edwards on Bills and Notes, at section 326, says: "There is, however, a manifest distinction between those cases in which the party has made a valid and explicit contract, as where a person writes his name on a back of a negotiable note, and that class of cases where the contract cannot be carried into effect as an indorsement, according to mercantile usage, as where a person indorses his name on the back of a note that is not negotiable. In respect to the former, the contract is to be enforced according to its legal effect, under principles that are well established, and presumed to be within the knowledge of the parties; while in respect to the latter, courts endeavor to prevent the utter failure of the contract, by giving it effect in some other way, as by allowing the holder to overwrite the indorser's name with the real contract implied by law, or recover against him as a maker or guarantor of the note." Section 391, of the same book, says: "Where a person puts his name, in blank, on the back of a promissory note, he may be held liable as maker or guarantor, when there is an agreement to that effect, and when he cannot be charged as an indorser, as in the case of a non-negotiable note. But, where the payee seeks to charge the indorser of a non-negotiable note, who indorsed the same before delivery, with the payment thereof, he must allege that the defendant indorsed with intent to become liable as guarantor or maker. This is allowed in order to prevent an entire failure of the contract, on the principle *ut res magis veleat quam pereat.*"

2 Parsons on Notes and Bills, 125, says: "In those States where the rule is adopted that a third person indorsing paper in blank before the delivery of it to the payee is liable as an indorser only, it is not applied in case the paper be not negotiable, inasmuch as a legal indorsement can only be made on negotiable paper; but the indorser in such case is held liable as a maker or guarantor."

These authorities clearly show that the rule against the admission of parol evidence to show the consideration, the relation of the parties and the circumstances attending the. execution of the paper, to the end that the true intent may be ascertained and effectuated, has no application in the case of nonnegotiable paper. This being true, the rule of liability pronounced by the law, must be the same in this case as it is in the cases of irregular indorsements, decided by this Court and to which reference has been made. In those cases it has been decided that the holder of the paper may treat the parties thereto either as makers or as guarantors, according to his own election, however their names may stand upon the paper. To this, it may be objected that the rule excluding parol evidence, when the names upon the paper are signed regularly and in succession, rests upon the ground that it operates to vary or contradict the terms of a written contract, and that this paper imports a debt due from Sehon to Smith, transferred by Smith to Camden, and that Mrs. Young stands in the attitude of assignee of Camden, and that, therefore, she must hold Smith and Camden as guarantors of the debt due from Sehon only, and was bound to the exercise of diligence to collect that debt. This contention is not without the semblance of reason, to say the least, but it has just been shown that the indorsements of such note are not regarded as importing a complete contract and that evidence is admissible to show the intention of the parties. Edwards on Bills and Notes, sec. 391. In some instances it has been held that the indorser is to be treated as a guarantor, and not as a maker, but the rule applied by this Court in the cases in which parol evidence has been admitted, entitles the holder of the paper to elect whether he will treat them as makers or guarantors. If there had been an agreement between Sehon, on the one side, and Smith and Camden on the other, that the latter should be

guarantors, or that Smith was to be guarantor as to Schon, and Camden guarantor as to both Smith and Schon, such agreement would be unavailing as against Mrs. Young, unless she had notice of it. *Long* v. *Campbell*, 37 W. Va., 665; *Burton* v. *Hansford*, 10 W. Va. 481; *Walson* v. *Hurt*, 6 Grat. 633. There is no evidence that there was such an agreement, unless the note itself is evidence of it. It cannot be for it is not commercial paper, and is not regarded in law as imposing liabilities or contracts, according to the order of indorsement. Smith testified in the case and did not say there was such an agreement. Camden did not come forward to testify. The evidence shows circumstances from which it is clear that this note was drawn up in the form in which it is for the purpose of procuring money from somebody for the benefit of Schon, and that the names of Smith and Camden were affixed to it with the intent to give it credit and strength with the person who should accept it and furnish the money upon it. That clearly makes them liable as joint promisors. Defendant in error had the right of election to hold them as original promisors or as guarantors.

For these reasons, the judgment must be affirmed.

*Affirmed.*