### In re C. G. GROVE & SON et al.

(District Court, N. D. West Virginia. August 3, 1925.)

1. **Bankruptcy ☞236—Statute held to authorize examination of bankrupt at first meeting of creditors, or at such other times as court shall order.**

Bankruptcy Act, § 7, subd. 9 (Comp. St. § 9591), relating to examination of bankrupt, authorizes such examination to be had at the first meeting of the creditors or at such other times as the court shall order, or at any time before final disposition of the proceedings, and hence claimant might recall bankrupt for further examination without sponsoring witness.

2. **Contracts ☞147(1) — Interpretation of promise should be such as to carry into effect intention of parties.**

Interpretation of a promise should be such as to carry into effect intention of parties.

**3. Evidence** ⟐➙423(6)—**Intention to secure a note is not to be imputed, and parol evidence admissible to prove character of contract by which indorser bound himself.**

Intention to secure a note is not to be imputed, but it may be sought in the facts and circumstances at the time of the transaction, and hence parol evidence is admissible to prove the character of the contract by which indorser bound himself, as understood by the parties to such contract.

**4. Bills and notes** ⟐➙241—**Proof of actual intention to secure note will countervail prima facie presumption.**

Proof of actual intention to secure a note will countervail prima facie presumption which law indulges with reference to obligation assumed by indorser.

**5. Contracts** ⟐➙194—**Writing held to manifest intention, by maker, to bind himself individually for payment of notes signed by partnership; "secure."**

Where maker of notes, in order to better secure payee, had renewal notes executed by partnership of which he was a member, writing by which he agreed to secure such notes on real estate *held* to manifest an intention by maker to bind himself individually for payment of such notes; "secure," when used as a verb, signifying to procure, insure, save.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Secure.]

**6. Bankruptcy** ⟐➙161(1) — **Writing by which maker secured payment of partnership notes held not void as preference, where made more than four months before bankruptcy proceedings of partnership.**

Where maker of notes, in order to better secure payee, had renewal notes executed by partnership of which he was a member, writing by which he agreed to secure payment thereof on real estate *held* not void as a preference, where more than four months intervened between execution of such writing and bankruptcy proceedings of partnership.

**7. Bankruptcy** ⟐➙340—**Claim filed against partner individually, in bankruptcy proceedings against partnership, was prima facie correct and was to be taken as true.**

Claim filed against partner individually, in bankruptcy proceedings against partnership, and sworn to by claimant, was prima facie correct and was to be taken as true, where its justice or correctness was not denied, and no evidence was adduced by trustee or any other person to overcome such prima facie case.

In Bankruptcy. In the matter of C. G. Grove & Son, a partnership, and C. G. Grove and Roy S. Grove, individually, bankrupts. The claim of Martha L. Breckenridge was by the referee allowed against the partnership assets but disallowed against the individual assets of C. G. Grove, and she petitions for review. Order reversed, with directions.

Isaac Wingert, of Chambersburg, for petitioner.

J. O. Henson, of Martinsburg, W. Va., for trustee.

BAKER, District Judge. Martha L. Breckenridge, the claimant herein, is a resident of Fayetteville, Pa., and the widow of J. H. Breckenridge, deceased.

J. H. Breckenridge was a farmer who dealt extensively in live stock, principally horses and mules. C. G. Grove, one of the bankrupts in this case, was also a live stock dealer for many years, residing near Martinsburg, Berkeley county, W. Va.

J. H. Breckenridge, deceased, and C. G. Grove had business dealings of considerable magnitude over many years; Breckenridge frequently advancing money to Grove for the purchase of stock. Balances having accumulated in the hands of Grove, at his request he was permitted to retain these sums as individual loans, giving his notes therefor. The testimony in this case shows that at one time Grove had borrowed from Breckenridge as much as $8,000, part of which arose from balances and part representing straight loans. During the period over which these transactions ran, C. G. Grove and Roy S. Grove, his son, formed a partnership under the firm name and style of C. G. Grove & Son. No dealings, either direct or indirect, were ever had between J. H. Breckenridge and the firm of C. G. Grove & Son; all these dealings being direct transactions between Breckenridge and C. G. Grove.

On or about April 1, 1920, Grove owed Breckenridge $7,000, represented by notes. Breckenridge having suffered for many years from a very malignant disease, a cancer, being told by his physician that he could not live long, set out to arrange his affairs to the best advantage for his wife. Grove come to the residence of Breckenridge about April 1, 1920, to discuss the matter of the $7,000 notes, looking to the payment thereof. Grove, being unable to meet the demands at that time, asked to be allowed to give renewal notes providing for payment covering several years, the old notes to be surrendered—the old notes being signed by C. G. Grove individually, and possibly one or two of them signed by Anna S. Grove, his wife. And C. G. Grove, desiring to give Breckenridge every security possible, believing a note signed by C. G. Grove & Son bound all the property of the firm of C. G. Grove and Roy S. Grove, as well as their individual property, gave to Breckenridge four notes upon which this proceeding is based, three of which were signed by C. G.

Grove & Son and Anna S. Grove, and one note signed C. G. Grove & Son. At the request of J. H. Breckenridge, C. G. Grove made the renewal notes payable to Martha L. Breckenridge, wife of J. H. Breckenridge; she having advanced much money to her husband during his last illness. These notes were turned over to J. H. Breckenridge, who retained them during his life and signed the credits indorsed on the back thereof.

In 1924 C. G. Grove individually, Roy S. Grove individually, and C. G. Grove and Roy S. Grove, partners trading as C. G. Grove & Son, became voluntary bankrupts. Martha L. Breckenridge turned the notes in question over to an attorney, who filed the same in the bankruptcy proceeding against C. G. Grove & Son, believing that the claim so far would reach any property of the firm or either of the parties thereto individually.

When the schedule of distribution was made out by the referee, claimant was allowed participation only in the firm assets. Claimant requested a hearing wherein additional proof might be made and the real facts spread on the record, for the purpose of establishing claim against the individual estate of C. G. Grove, who was the real debtor, and whose individual notes had never been paid; the notes in question being but renewals of the former individual obligation.

Following the hearing, an additional claim was filed against the individual estate of C. G. Grove. Thus claimant has filed against C. G. Grove & Son, the partnership, and against C. G. Grove individually. Upon final hearing the referee allowed the claim against the partnership funds of C. G. Grove & Son, and refused to permit Martha L. Breckenridge to participate in the individual estate of C. G. Grove; whereupon this review was taken.

The facts in this case are not in dispute. When C. G. Grove arrived at the Breckenridge home, Mr. Breckenridge requested additional security. Thereupon, both Mr. Breckenridge and C. G. Grove believing that giving the notes of C. G. Grove & Son in lieu of the notes of C. G. Grove would cover all the personal assets of C. G. Grove & Son, C. G. Grove, and Roy C. Grove, the notes were thus executed. The former notes of C. G. Grove were not paid, but were delivered by Mr. Breckenridge to him in exchange for the new notes, which were made payable to Martha L. Breckenridge.

J. H. Breckenridge having departed this life, Martha L. Breckenridge attended to the business and filed the notes in question in the bankruptcy proceeding. Upon being informed that her notes had been allowed only against the partnership assets of C. G. Grove & Son, she immediately asked for a hearing before the referee, and presented to him the true facts, and asked that the claim be allowed out of the individual estate of C. G. Grove as well as the partnership assets.

It has been stated in argument that the partnership funds will pay approximately 3 per cent., and the individual estate of C. G. Grove approximately 25 or 30 per cent.

[1] Objection was made by the trustee, on page 42 of the depositions, to the recalling of C. G. Grove for further examination, unless he be made the claimant's own witness. By reference to section 7 of the Bankruptcy Act, under the heading "Duties of Bankrupts," subsec. 9 (Comp. St. § 9591), I find:

"When present at the first meeting of his creditors, and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate."

The purpose of an examination of the bankrupt under this statute is to assist in the administration of the bankrupt's property. From the reading of this section it is clear that such examination may be had at the first meeting of creditors or at such other times as the court shall order, and may be granted at any time before the final disposition of the proceedings. Collier on Bankruptcy (13th Ed.) pp. 349, 366 to 369, inclusive; In re Mellen (D. C.) 97 F. 326; In re Fellerman (D. C.) 149 F. 244; In re Back-Bay Auto Co. (D. C.) 158 F. 679; In re Bryant (D. C.) 188 F. 530.

Objection was made to the allowance of these notes against the individual estate of C. G. Grove, for the reason that the notes are signed only by C. G. Grove & Son, partners. On the bare face of the notes this contention of the trustee would be correct under the law as set out in Collier on Bankruptcy (13th Ed.) § 5, under the heading of Partners, wherein it is stated under subsection (f):

"The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each part-

ner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after the payment of the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership."

There has, however, been filed in this case, in addition to the oral testimony, a paper marked "Exhibit J" reading as follows:

"April 1, 1922.

"This writing is to show that I will see that Mr. J. H. Breckenridge, who holds notes against me for certain sums of money, that in the event of anything happening me I will secure him on real estate.

"[Signed] C. G. Grove."

This entire paper is admittedly in the handwriting of and signed by C. G. Grove. What is that paper? What did C. G. Grove mean when he said he would "secure" this indebtedness? The word "secure," when used as a verb, signifies to procure, insure, save. Walker v. Globe Newspaper Co. (C. C.) 130 F. 593; Wheaton v. Peters, 8 Pet. (33 U. S.) 591, 8 L. Ed. 1055.

The Supreme Court of Maine, in the case of True v. Harding, 12 Me. 193, 195, states as follows: "A promise to secure the note is a stipulation that it should be paid according to its tenor and effect." It is as strong a term as an engagement to guarantee.

[2-4] Taking this paper, Exhibit J, alone, it is very ambiguous. What was the intention of the parties at the time this paper was prepared and delivered? · The interpretation thereof should be such as to carry into effect the intention of the parties. And the better considered cases hold that the intention of the parties is not to be determined with the implication arising from the mere fact of signature—in short, the intention is not to be imputed, but it may be sought in the facts and circumstances at the time of the transaction; therefore parol evidence is admissible to prove the character of the contract by which the indorser bound himself as understood by the parties to such contract. Proof of actual intention will countervail the prima facie presumption which the law indulges with reference to the obligation assumed by the indorser. 3 R. C. L. § 340, p. 1124; Young v. Sehon, 53 W. Va. 127, 44 S. E. 136, 62 L. R. A. 499, 97 Am. St. Rep. 970.

[5] After reading this entire record, I am convinced that on April 1, 1922, at the time Exhibit J was executed by C. G. Grove, it was his intention to bind himself individually for the payment of each and every one of the notes in question in this case.

[6, 7] More than four months having intervened between the execution of this paper and the bankruptcy proceeding, no preference can be claimed herein. The last proof of claim of Martha L. Breckenridge filed against C. G. Grove individually, being sworn to, is prima facie correct. No one having denied it to be a just claim, nor the correctness of the amount, no evidence having been adduced by the trustee or any other person tending to overcome the prima facie case, it must be taken as true. Whitney v. Dresser, 200 U. S. 532, 26 S. Ct. 316, 50 L. Ed. 584.

I therefore conclude that claimant, Martha L. Breckenridge, was entirely within her rights under the law in asking to be heard and in filing her claim against the estate of C. G. Grove individually, in being heard by the referee, and in requesting participation in both the partnership estate of C. G. Grove & Son and C. G. Grove individually.

The referee should therefore permit the claims of Martha L. Breckenridge to participate in the partnership funds, as a partnership, and in the individual funds of C. G. Grove, as an individual.